Morning. Good morning. Kimberly Trimble, Federal Defenders. Could you pull the mic a little closer to you, please? Yeah, thanks. Thank you. This appeal is about a man who does not know who his parents are, who does not know where he was born, and who was raised primarily in an abusive household in the United States. He was ultimately deported when the immigration judge wrongfully held him to the burden of proving that he was a United States citizen. Rather than... When an alien applies for admission, as Mr. Vargas did on June 10, 2003, the alien is required to prove that he is clearly and beyond a doubt entitled to be admitted to the United States and is not inadmissible as charged. I'm reading from HCFR 1240.8. Yes, Your Honor, you've zoned in on precisely the difference in the burdens of proof between inadmissibility or admissibility and deportability. Whether Mr. Vargas was admitted is a different question than whether he could be deported. I'm not arguing that Mr. Vargas had to be allowed to enter the United States, but the government holds the burden of proving alienage before a deportation order can be entered against him. Didn't he previously state that he was born in Mazatlan? No, Your Honor. The only prior statements that we have from Mr. Vargas are twice indications from hearsay evidence that he actually said he was a U.S. citizen, and then one encounter five days before this encounter when he was in custody and there was an interview with an agent who actually testified at trial that he had no recollection of this interview. Talking about the statement on November 28, 2009. Oh, Your Honor, that was after the deportation order was entered. So the deportation order was from 2003. Any of the evidence about his deportability at 2003 should be limited to the information before the immigration judge at that time. But would you agree, counsel, he was an arriving alien? Yes, Your Honor. So going back to Judge Vea's question, why should he not be subject to that burden on him under the CFR? If the question was whether he could be admitted, the burden would be on him, but the question here is whether a deportation order could be entered against him. That's an essential difference because this deportation order is being used to support a criminal conviction against him. I'm not arguing that he had to be admitted here, and in fact there's numerous cases where proceedings have just been terminated without an order of deportation when alienage can't be determined here. So what should have happened if alienage wasn't determined in either direction is that he's essentially turned back to Mexico. I mean, the CFR says for arriving aliens in proceedings commenced upon a respondent's arrival in the U.S. Isn't that Mr. Vargas' situation? Well, but Your Honor, he was then placed in expedited removal proceedings. So he's not in a proceeding to prove his admissibility. He's in a proceeding to prove whether he's deportable. So the essential question here is who carries the burden when deportability is charged, not when admissibility is the question. But the only reason he wasn't submitted to expedited removal was because he made a false claim of U.S. citizenship. Well, Your Honor, respectfully... Then he had to be taken before an I.J., right? Respectfully, Your Honor, that government had to prove it was a false claim. He made a claim of U.S. citizenship. And the I.J. said, I don't have anything tangible here before me. I can't determine this in your favor, so therefore I find that you're not a citizen. Well, Your Honor, he actually didn't say the end part. He said he had no evidence before him, and so he couldn't come to a conclusion in either direction. In other words... Well, who has the burden of proving he's a citizen of the United States? The government has a burden of proving he's not a citizen? Yes. When it comes to deportation, this is clearly established in Murphy and all cases after Murphy that are discussing the burden-shifting framework for any deportation. But Murphy predates the CFR at 1240.8, so hasn't Murphy effectively been superseded by the CFR? No, Your Honor. I cited the Ayala-Villanueva case, along with numerous other cases in my reply on page 7, that cite to Murphy even after Ira-Ira. Excuse me. Go ahead. The burden-shifting framework, which has been endorsed after Ira-Ira, is that the government has the initial burden of proving foreign birth. Then the burden shifts to the individual to give any evidence of citizenship, and then the ultimate burden still rests on the government to prove by clear and convincing evidence that the person is an alien. What's the date of the expedited removal you're concerned about? 2003, June 25, 2003. June 25th? Yes. Didn't he voluntarily return to Mexico after being arrested on June 5th prior to that? Yes, Your Honor. He did return to Mexico on June 5th. Why doesn't that shift the burden to him to go forward? Well, for two reasons. First, that was not an order against him. No, but it's evidence. It's some evidence, but the immigration, the BIA has actually found that that's not convincing evidence, a voluntary return, particularly in a case like- Oh, I don't know what you mean by convincing evidence. If they have to come forward with some evidence of alienage, and they prove that a few days earlier he voluntarily returned to Mexico as an arriving alien, why doesn't that shift the burden? They didn't do that, Your Honor. They didn't introduce any evidence of this prior voluntary return in this case. Well, even if that's true, why wouldn't this then render whatever happened not fundamentally unfair in light of these facts? Well, for two reasons. First, that single admission, that single statement that he was Mexican, it's actually not even attributed to him as an exact statement. It was not a statement under oath. Did he voluntarily go back to Mexico? It appears he did go back to Mexico. However, the documents that are usually issued to an individual when they get a voluntary return were not in his A file. Additionally, that report indicates that Mr. Vargas was acting erratically at the time of that interview. Well, I mean, he may have an explanation for it, but isn't that some evidence that he's a Mexican citizen? It's certainly not clear and convincing evidence, Your Honor. Maybe not, but isn't it some evidence that then shifts the burden back to him? I don't think so, Your Honor. Why? Well, in particular, when he came to the Port of Entry on June 10th asking for help and explaining why those prior statements were not reliable, he said on June 10th in a sworn statement, the only sworn statement in evidence, the only statement under oath, he said he doesn't know where he was born and that he believes that he's a U.S. citizen. Well, you're saying it's unverified, right? Well. And doesn't CFR Section 1235.3 on expedited removal say if there's an open question, it's unverified, the immigration officer shall issue an expedited order of removal? Well, yes, Your Honor. So why doesn't that answer the question? He was properly removed in 2003. No, Your Honor, because the immigration officer has to issue the order of removal, but it's not effected until he has this claimed status hearing in front of the immigration judge, which he's entitled to under the regulations and the statute itself. So this court has previously held an individual is entitled to whatever process Congress gives him. In a situation where someone makes an under oath statement that they believe they're a U.S. citizen, they're entitled to this hearing before the immigration judge. And, in fact, in our very case, that trial, the immigration, the officer who entered this expedited order of removal said that she made no determination as to the validity of this claim or as to whether Mr. Vargas was an alien or not an alien. Because she understands that in this instance, the order of removal is not effective until the claim is reviewed by the immigration judge. So then we go in front of the immigration judge. Well, let me just, let's just think practically here for a minute. Okay, this is an expedited removal proceeding. How does it make sense that in that context, the government has this heavy burden of proving citizenship or proving lack of citizenship? Well, Doesn't that sort of undercut the word expedited? No, Your Honor. Expedited removals are supposed to occur. I see my time is running out, and I would like to reserve a minute for rebuttal. Why don't you answer the question, then you can reserve. In an expedited removal proceeding, these are supposed to be easy, straightforward cases. However, when something like this comes up, Congress recognized that this may come up. That's why additional procedures were put into place. And there are constitutional concerns if these procedures were not put into place. If an actual U.S. citizen comes to the port of entry without any valid documentation, and there's no way of knowing that he's a citizen, it would be constitutionally impermissible for a deportation order to be entered against that person. Congress doesn't have the power to strip someone of their citizenship without due process. And that's why for an actual deportation order, this Court has never held that the burden is on the alien to prove they're not deportable. The burden has always been on the government to prove by clear and convincing evidence that the individual is deportable. At minimum, it's a jurisdictional question. Deportation orders and deportation proceedings can only be held against someone who is not a U.S. citizen. Thank you, Ms. Strinbaugh. We've got about a minute left in rebuttal. Thank you. Good morning. Good morning, Your Honors. Andrew Galvin on behalf of the United States. Thank you. There was no due process violation here in the June 2003 expedited removal proceeding because the government does not have to prove alienage in an expedited removal proceeding.  ACFR 1240.8, that clearly puts the burden on an arriving alien. Now, the appellant fails to make the distinction between someone who is already inside the country and someone who is seeking admission. And she's used the term deportation. Pre-IRA-IRA, there was a distinction between an exclusion and a deportation. And all of the cases that the appellant cites are in the deportation context, not in the exclusion context. And what we have here is someone who's trying to arrive and is seeking admission and more properly falls under the exclusion context. Moreover, in the Section 240 of the INA. Let me see if I understand you. You say that if a person somehow makes it across the border and gets all the way, say, to Utah, right, then in a deportation proceeding, the burden is on the government to prove that he is an alien by clear and convincing evidence? If that person had been in, can show that they've been in the United States for more than 14 days, then an expedited removal proceeding would not be appropriate and would fall under Section 240 of the INA. And, yes, Your Honor is correct. Under ACFR 1240.8, in the case of a respondent charged as being in the United States without being admitted or paroled, the service must first establish the alienage of the respondent. But that's not the case. Whereas here, the person is seeking admission into the United States and is outside of the country. So a deportation order bars reentry for about 10 years, right? I believe in an expedited removal context, it's five years, if I'm not mistaken. An expedited removal is five years. Yes, Your Honor. All right. So what you're saying is if the alien is caught at the border and hasn't spent 14 days in the United States and is admitted to expedited removal, makes a claim of U.S. citizenship, goes before an IJ, that the burden is not on the government to prove that he's an alien by clear and convincing evidence, but the burden is on the alien to prove that he is a U.S. citizen. That's absolutely correct, Your Honor. And if you can imagine if that were not the case, any person in any country of the world could come to the border and say, I'm a United States citizen. And then they would automatically be entitled to go before an immigration judge. Well, your opponent says that's a rare day. In other words, she suggested that in most cases that's not going to be ambiguous. This happens to be a case where it's ambiguous. And it is ambiguous on the record. I mean, you can tell me if I'm wrong, but I don't see any dispositive evidence one way or the other that he's either a Mexican or U.S. citizen, right? That's correct, Your Honor. So why isn't this just a narrow little oddity where the CFR does not expressly address the statute and maybe when it's ambiguous, maybe the due process rights swing towards the removal end rather than the arriving alien end? Because what would happen, Your Honor, is anyone could come and make a claim of United States citizenship. And, you know, without any sort of records, the United States would not be able to prove alienage in every case. So that person would have a due process right to go before an immigration judge. And before they have to produce any shred of evidence of United States citizenship, the government would have a burden to produce, show alienage. Well, that's a fine policy argument, but what are you hanging your hat on in terms of a citation, case law, CFR, statute? Well, INA Section 240C2A, which discusses the burden on the alien. In a proceeding, the alien has the burden of establishing. If the alien is an applicant for admission, as we have here, that the alien is clearly and beyond doubt entitled to be admitted and is not inadmissible under Section 1182 or 212 of the INA. Well, but 1240.8 is burdens in removal proceedings. Right, Your Honor, and that's what we have here, an expedited removal proceeding. That's for deportation though, right? Well, the problem is, Your Honor, now everything is called a removal proceeding, whether it's a deportation or exclusion. That's after Ira Iris. So there is some, it's difficult because some of the cases talk about exclusion, some talk about deportability. Now we just talk about removability. Are you saying 1240.8 applies to both deportation proceedings and expedited removals? Yes, Your Honor. So I understand that the nut of your argument is this guy was an arriving alien? Yes, Your Honor, he was an arriving alien. He had to prove he was a citizen. If he had been found here after a period of time and they want to remove him, then they have to go through all the whistles and bells and prove that he is an alien. Is that it in a nutshell? That's absolutely the government's position. All the government had to do, all the immigration inspector had to do when that person sought admission is to show, to determine whether there's evidence that that person was deportable as charged. And they were charged with not having valid entry documents and making a false claim to U.S. citizenship. The person had no documents, valid entry documents. He said he had no documents. He admitted he had a fake social security number and card. And that was it. Based on that, the person was deportable as charged and all the immigration inspector had to do was issue the expedited removal order. But because he made this claim to United States citizenship, then he had to go before the immigration judge. But at that hearing, the government did not have a burden to establish alienage. The burden was entirely on the alien to establish his United States citizenship. And he was unable to do that, so the immigration judge reaffirmed the expedited removal order and the removal order should stand. I'd like to take my remaining time to discuss some of the allegations with respect to the closing argument and the prosecutor. Why do you want to rebut stuff she didn't bring up? Well, I'll continue on the 132060 allegation if your honors would prefer. Well, I mean, she's supposed to confine her rebuttal to the stuff you've mentioned. Very well, unless the court has any additional questions. One last question, sir. To come out of your way, are we going to effectively have to hold that the Supreme Court in Woodby and this court in Murphy have been superseded by statute? I don't think so, your honor. That's one opportunity. But I think the better route there is to recognize that Murphy and Woodby are talking about deportation proceedings. Now, we're talking about pre-IRA-IRA, so that word matters. That's talking about a deportation proceeding when someone is already in the country and the government is seeking to deport them from the country. So I think that you can distinguish it. You don't have to overrule those cases by just saying in this case you have an arriving alien. We're not going to overrule them. We would say they're superseded by statutory developments. Correct, but I don't think you even need to go that far because of the different factual scenario. In that case, you had a deportation, and right here we're talking about an exclusion. Now, those terms don't matter as much now post-IRA-IRA, but I think that's the way you distinguish those cases. Thank you. Thank you, Mr. Galvin. Ms. Trimble, you've got about a minute left. Let me ask you this. Mr. Galvin makes the point that Mr. Vargas, he says, was an arriving alien, and therefore he had the burden. What's the answer to that? I think it begs the question. To call him an arriving alien assumes that he's already been proven to be an alien. He cannot be put in proceedings even as an arriving alien unless the government has proved that he's an alien. Well, what were the facts? Did he show up at the port of entry? Yes, and he asked for help. And you wouldn't call him an arriving person? Arriving person, but not arriving alien. Okay, and if you're an arriving person, you have to prove you're a U.S. citizen. That's not true, Your Honor. If you're an arriving person, you can prove that you're lawful permission to come in, which can be a U.S. citizen. Who has to prove that? Well, the point, Your Honor, is, and actually I think the best answer to this is to point to the case in R.A. Avales-Nava, cited in my briefing. That case, which is a BIA case, distinguishes between the refusal to admit someone at a port of entry versus putting them in formal deportation proceedings. If someone can't prove they're admissible, that does not mean they can enter this country. It just means that they haven't proven that they can enter this country. So if you come to the border and they say, what's your nationality, you can say, that's for me to know and for you to find out and you don't have to say anything? Sure, and then you can't come in. They turn you around right at the port of entry. If you say you're a U.S. citizen or an LPR or a refugee, then you get this claim status proceeding in the expedited context. And I think actually looking at the… You said arriving person. What statute says you can be either a citizen or an alien or a person? How can you be this sort of a person walking up to the border? Oh, Your Honor, I was perhaps unclear. I was trying to answer why Mr. Vargas can't just be placed into proceedings for arriving aliens before we know he's an alien. Someone's not necessarily an alien because they're coming to the port of entry. You can't automatically be put into the proceedings for arriving aliens. Yeah, but you're either an alien or a citizen. There's no third category of stateless person, or as Judge Silverman said, take a guess. There's not that category. Correct, Your Honor. So if you arrive and you're a U.S. citizen, you're not going to be put into proceedings for arriving aliens. You're not going to have to prove that you're… You don't think that person has the burden of proving he's a citizen? No, Your Honor. I think the government has the burden of proving deportability, and I think that's supported… At the border. Yes, and I think that's supported by the statutes. In particular, I'd like to point… I see you're out of time, so why don't you finish your sentence and then… In particular, I'd point to the statutes, and actually they're cited in Note 2 of Lujan, which is the only case the government cites here. All of the statutes refer to the burden on the refugee, asylee, or lawful permanent resident to prove their status. They are silent as to who carries the burden for a citizen because it obviously rests with the government. Thank you, Mr. Galvin. Thank you. The case just argued is submitted.
judges: Donato, Silverman, Bea